UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| LUIS PEREZ GARCIA, individually and on behalf of all others similarly situated, |
| Plaintiff, |
| -against- |
| HIRAKEGOMA INC. (d/b/a NAGOMI), KENSAN KIM, SUYEN KIM, and JONG BOK KIM, |
| Defendants. |

CIVIL ACTION NO.: 17 Civ. 7608 (SLC)

**OPINION & ORDER FOLLOWING
<u>DAMAGES INQUEST</u>**

**SARAH L. CAVE,** United States Magistrate Judge.

In this action, filed under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 <u>et</u> <u>seq</u>., and New York Labor Law ("NYLL") § 190 <u>et</u> <u>seq</u>., Plaintiff Luis Perez Garcia seeks payment of unpaid overtime wages and related relief from Defendants Hirakegoma Inc. (d/b/a Nagomi), Sangwook Kim, Suyeon Kim, and Jong Bok Kim (collectively, "Defendants").[1] (ECF No. 1 ¶¶ 1–5). Perez Garcia alleges that during several periods from 2006 through September 2017, he regularly worked as a food preparer, cook, dishwasher, and delivery worker at Defendants' restaurant more than 40 hours per week, but Defendants failed to compensate him for his overtime hours as required by the FLSA and the NYLL, and failed to provide him with wage notices or wage statements as required by state law. (<u>Id</u>. ¶¶ 6–9, 69). On February 1, 2019, the Honorable Henry B. Pitman, United States Magistrate Judge, ordered that a default judgment be entered against Defendant Hirakegoma, that the action be stayed as to Defendants Sangwook Kim and Suyeon

---

[1] Defendant Sangwook Kim was improperly named in the Complaint as "Kensan Kim," and Defendant Suyeon Kim was improperly named as "Suyen Kim." (ECF No. 11). The Court will use the correct spellings of these Defendants' names.

Kim in light of their having filed bankruptcy petitions,[2] and that Perez Garcia submit evidence in support of his claim for damages.  (ECF No. 63).  This action has been reassigned to the undersigned for an inquest on damages.

For the reasons that follow, the Court orders that Perez Garcia be awarded damages against Defendant Hirakegoma in the amount of $388,548.27, comprised of (i) $151,009.38 in unpaid overtime wages, (ii) $7,997.75 in unpaid spread-of-hours wages, (iii) $159,007.13 in liquidated damages, (iv) $10,000.00 in statutory damages under state law, and (iv) $60,534.01 in prejudgment interest.  In addition, Plaintiff's counsel is entitled to attorneys' fees in the amount of $9,112.50 and costs in the amount of $564.00.

## I.    BACKGROUND

### A.  Factual Background[3]

Defendants owned and operated a restaurant known as Nagomi located at 179 Prince Street in New York City.  (ECF No. 14 ¶ 2; ECF No. 68-2 ¶ 3).  From sometime in 2006 until September 2012, and again from March 2015 until September 27, 2017, Perez Garcia worked at Nagomi as a food preparer, cook, and delivery worker.  (ECF No. 68-2 ¶¶ 5–6).  Throughout his employment at Nagomi, Perez Garcia worked more than 40 hours per week.  (ECF No. 68-2 ¶ 9).

During the period October 2011 until September 2012, Perez Garcia typically worked 69 hours per week at a fixed salary of $550 per week.  (ECF No. 68-2 ¶¶ 13, 16).  During the period

---

[2] Defendant Jong Bok Kim is deceased, and no executor or estate has been substituted in his stead.  (ECF No. 54).

[3] Unless otherwise indicated, the facts are taken from the Complaint (ECF No. 1), Answer (ECF No. 14), and Declaration of Luis Perez Garcia (ECF No. 68-2), and are accepted as true for purposes of determining Defendants' liability.  See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor.").

March 2015 until September 27, 2017, he also typically worked 69 hours per week.  (ECF No. 68-2 ¶ 14).  His salary from March 2015 until June 2015 was $750 per week, from July 2015 until December 2016 his salary was $800 per week, and from January 2017 until September 27, 2017 his salary was $900 per week.  (ECF No. 68-2 ¶¶ 17–19).  His wages did not vary when he was required to stay late or work longer than usual.  (ECF No. 68-2 ¶ 20).

During his employment, Defendants did not require Perez Garcia to keep track of his time or use any time-tracking device to log his hours; as a result, he believes he was not compensated for all of the hours he worked.  (ECF No. 68-2 ¶ 21).  Defendants did not provide Perez Garcia with any wage notices or wage statements as required by NYLL § 195(1) and (3), nor did they pay him the required overtime premium for hours he worked over 40 hours per week.  (ECF No. 68-2 ¶¶ 22–27).  Defendants required Perez Garcia to purchase his own tools of the trade, i.e., an electric bicycle, helmet, chain and lock, lights, and bike maintenance.  (ECF No. 68-2 ¶ 28).

### B.  Procedural Background

On October 4, 2017, Perez Garcia filed a complaint in this Court asserting claims against the Defendants under the FLSA and the NYLL.  (ECF No. 1).  After the Defendants filed their Answer (ECF No. 14), the parties conducted discovery and engaged in at least two attempts to settle this action with Judge Pitman's assistance.  (ECF No. 40).  The second attempt was successful, and on October 17, 2018, Judge Pitman approved the parties' settlement and closed the case.  (ECF No. 43).

The resolution was short-lived.  Five days after Judge Pitman approved the settlement, Plaintiff notified the Court that the Defendants had defaulted on their obligations under the settlement agreement by failing to execute the accompanying consent judgment and asked that

the action be restored to the active calendar. (ECF No. 44). Defendants' counsel responded, professing that his clients had not had a "change of heart" about the settlement and would be executing the consent judgment. (ECF No. 46). The parties continued to attempt to finalize the consent judgment for execution, and Judge Pitman held a conference with the parties to attempt to salvage their settlement. (ECF No. 53). Defendants' counsel moved to withdraw his representation of Defendant Jong Bok Kim, who was now deceased. (ECF No. 54). Thereafter, Defendants' counsel moved to withdraw his representation of the remaining defendants, citing his clients' failure to pay his outstanding fees, unresponsiveness to his communications regarding execution of the consent judgment, and, ultimately, their filing for bankruptcy. (ECF No. 57). Judge Pitman granted the motion to reopen the case, granted the motion to withdraw, and ordered Defendant Hirakegoma to retain new counsel. (ECF Nos. 60–61). After Defendant Hirakegoma failed to do so and failed to appear for a scheduled conference, Judge Pitman ordered that default be entered against it, and the case be stayed as to Defendants Sangwook Kim and Suyeon Kim in light of their bankruptcy filings. (ECF No. 63).

The action was subsequently reassigned to the undersigned. In response to the Court's request, Plaintiff requested a certificate of default as to Defendant Hirakegoma, which the Clerk of Court entered on October 21, 2019. (ECF Nos. 69– 72). The Court subsequently ordered Plaintiff to file proposed findings of fact and conclusions of law as to the damages and monetary relief he was seeking. (ECF No. 73). In doing so, the Court warned Defendant Hirakegoma that if it failed to file any response, the Court would conduct the inquest based solely on the written submissions of the parties without a hearing. (Id.) On February 21, 2020, Plaintiff filed his

proposed findings of fact and conclusions of law.  (ECF No. 74).  Defendant Hirakegoma has not filed a response or otherwise contacted the Court regarding the inquest.

## II.   DISCUSSION

No party has requested a hearing on the issue of damages, and Defendant Hirakegoma has not submitted any written materials.  Therefore, the Court has conducted the inquest based solely on the materials Perez Garcia has submitted in support of his request for damages.  See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) ("Rule 55(b)(2) of the Federal Rules of Civil Procedure . . . allows but does not require the district judge to conduct a hearing."); Perez v. 50 Food Corp., No. 17 Civ. 7837(AT) (BCM), 2019 WL 7403983, at *3 (S.D.N.Y. Dec. 4, 2019), adopted by, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020); Fed. R. Civ. P. 55(b)(2).

### A.  Legal Standards

#### 1.  Determining liability

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants."  Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015).  The Court must determine "whether the allegations in the complaint establish the defendants' liability as a matter of law."  Id.  If the Court finds that the well-pleaded allegations

establish liability, the Court then analyzes "whether plaintiff has provided adequate support for [his requested] relief." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." Perez, 2019 WL 7403983, at *4.

### 2. Determining damages

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm. v. Berman, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), adopted by 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012). The evidence the plaintiff submits must be admissible. Poulos v. City of New York, No. 14 Civ. 03023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible evidence"). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. Fustock v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has]

ensured that there [is] a basis for the damages specified in the default judgment") (internal citation omitted).

In a FLSA case such as this, where Defendant Hirakegoma has failed to produce any employment records, the Court may credit Perez Garcia's "recollections regarding [his] hours and pay in conducting [the] inquest." Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), as amended Mar. 29, 2018. The Court "must ensure that [his] approximations and estimates are reasonable and appropriate." Id. Ultimately, the default judgment the Court enters "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); see Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) (limiting damages to those specified in demand in complaint "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer"); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 Civ. 1318 (GBD) (BCM), 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018) (holding that plaintiff could not recover damages for unalleged claims against defaulted defendant). [4]

**B. Jurisdiction and Venue**

The Court has subject matter jurisdictions over Perez Garcia's claims.  He sues under a federal statute—the FLSA—such that subject matter jurisdiction lies under 28 U.S.C. § 1331.  The

---

[4] Perez Garcia declares that his salary from January 2017 until September 27, 2017 was $900 per week (ECF No. 1 ¶ 63; ECF No. 68-2 ¶ 19), but his attorney's declaration provides that his salary for this time period was $920 per week (ECF No. 68 ¶ 41).  In accordance with the law in this Circuit, the Court will calculate Perez Garcia's 2017 damages at a salary of $900 per week.

Court may exercise supplemental jurisdiction over his NYLL claims because they arise out of the same facts and circumstances as his FLSA claims.  See Perez, 2019 WL 7403983, at *5.

The Court has personal jurisdiction over Defendant Hirakegoma, which is "a necessary prerequisite to entry of a default judgment."  Reilly v. Plot Commerce, No. 15 Civ. 05118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016), adopted by, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (quoting Sheldon v. Plot Commerce, No. 15 Civ. 5885 (CBA) (CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016)).  Defendant Hirakegoma answered the complaint, participated in some discovery, engaged in settlement negotiations, and never moved for dismissal under Federal Rule of Civil Procedure 12(b)(2), thus waiving any argument that the Court lacked personal jurisdiction.  See Fed. R. Civ. P. 12(h)(1)(B); Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 62 (2d Cir. 1999).  Defendant Hirakegoma has also waived any objection to venue in this Court.  See Fed. R. Civ. P. 12(b)(3), 12(h)(1)(B).

**C.  Liability**

To state a claim for wages under the FLSA, a plaintiff must allege that:  (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked for hours for which he did not receive minimum or overtime wages.  See Tackie v. Keff Enter., Inc., No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014).  A wage-and-hour claim under the NYLL involves a similar analysis, "except that the NYLL does not require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual sales."  Id. at *2 n.2.  To recover overtime compensation, a plaintiff "must allege sufficient factual matter to state a plausible claim that [he] worked compensable overtime in a workweek longer than 40 hours."  Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013).  To recover spread-of-hours pay,

he must also allege that he worked "more than ten hours per day . . . and [was] not paid an additional hour at the minimum wage rate for days in which [he] worked [ten] or more hours." Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011).

### 1. Employment relationship

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts afford the term "employer" "an expansive definition with 'striking breadth.'" Mondragon v. Keff, 15 Civ. 2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 US. 318, 326 (1992)). Under the FLSA, "[a]n individual may have multiple 'employers,'" such that "'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'" Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether Defendant Hirakegoma was Perez Garcia's "employer" for FLSA purposes, the Court examines the "economic reality" of the working relationship. Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013). Courts in the Second Circuit consider four non-exclusive factors to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Irizarry, 722 F.3d at 105 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)). This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive[.]" Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also very broad, <u>see</u> NYLL § 190(3),[5] "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" <u>Mondragon</u>, 2019 WL 2551536, at *7 (quoting <u>Hart v. Rick's Cabaret Int'l, Inc.</u>, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  In the absence of a decision from the New York Court of Appeals answering "the question whether the test for 'employer' status is the same under the FLSA and the NYLL," <u>Camara v. Kenner</u>, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." <u>Hart</u>, 967 F. Supp. 2d at 924 (internal citation omitted).  "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." <u>Martin</u>, 273 F. Supp. 3d at 422.

Perez Garcia alleges that Defendants employed him at their restaurant, Nagomi, and that at all relevant times, he was an "employee."  (ECF No. 1 ¶¶ 20–21, 37–38).  His factual allegations adequately support the conclusion that Defendant Hirakegoma was his employer.  Defendants have admitted that they owned, operated, and controlled Nagomi (ECF No. 14 ¶¶ 23, 37), where Perez Garcia worked as a food preparer, cook, and delivery worker during several periods from 2006 until September 2012, and March 2015 until September 27, 2017.  (ECF No. 68-2 ¶¶ 5–6).  His duties included

---

[5] NYLL § 190(3) defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

> dishwashing, stocking items delivered to the Japanese Restaurant in the basement, preparing food, mopping the basement, cleaning the kitchen drainage tank, twisting and tying up carboard boxes, taking out the garbage, cutting vegetables, peeling shrimp, shopping at the supermarket, and organizing and taking out the recyclables.

(ECF No. 1 ¶ 6). Perez Garcia's duties in these roles did not require discretion or independent judgment. (ECF No. 68-2 ¶ 7). Perez Garcia also alleges that Defendant Hirakegoma, through its owners, officers, and agents Defendants Sangwook Kim and Suyeon Kim, "determined the wages and compensation of employees, including Plaintiff Perez, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees." (ECF No. 1 ¶¶ 27–28, 31–32). Perez Garcia has therefore adequately alleged an employer-employee relationship with Defendant Hirakegoma, the only remaining defendant. Perez, 2019 WL 7403982, at *6.

### 2. Interstate commerce

Under the FLSA, Perez Garcia must establish that he or his employer was engaged in interstate commerce. See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); see 29 U.S.C. § 207(a)(1) (employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at "one and one-half times the regular rate at which [they are] employed").

Perez Garcia has plausibly alleged both theories. He "regularly handled goods in interstate commerce, such as food, condiments[,] and supplies necessary to perform his duties as food preparer and cook." (ECF No. 1 ¶ 54; see ECF No. 68-2 ¶ 8). Thus, he is an individual

"engaged in commerce" for the purposes of the FLSA.  Tackie, 2014 WL 4626229, at *3.  In addition, Perez Garcia has alleged that "numerous items" that were sold in Nagomi "on a daily basis were produced outside of New York," and that Defendants had annual gross sales of at least $500,000.  (ECF No. 1 ¶¶ 46–47).  This meets the threshold for enterprise liability under the FLSA, see 29 U.S.C. § 203(s)(1)(A), and therefore, Perez Garcia has satisfied the interstate commerce element for FLSA liability.  See Mondragon, 2019 WL 2251536, at *9.

### 3.  Unpaid overtime

Both the FLSA and the NYLL require an employer to pay an overtime rate of one and one-half times the employee's "regular rate" of pay.  29 U.S.C. § 207(a)(1); N.Y. COMP. CODES R. & REGS. TIT. 12, § 142-2.2.  To state an overtime claim, Perez Garcia "must allege only that [he] worked compensable overtime in a workweek longer than forty hours, and that [he] was not properly compensated for that overtime."  Tackie, 2014 WL 4626229, at *3.

Perez Garcia alleges that from October 2011 until September 2012, and from March 2015 until September 27, 2017, he worked from 11:00 a.m. until about 11:00 p.m. Mondays through Fridays, and from 2:00 p.m. until 11:00 p.m. on Saturdays, for a total of 69 hours per week.  (ECF No. 68-2 ¶¶ 13–14).  His salary was $550 per week from October 2011 until September 2012, $750 per week from March 2015 until June 2015, $800 per week from July 2015 until December 2016, and $900 per week from January 2017 until September 27, 2017.  (Id. ¶¶ 16–19). Defendant Hirakegoma did not pay him overtime for the hours he worked in excess of 40 hours per week.  (Id. ¶ 23).  Thus, Perez Garcia has adequately stated a claim for unpaid overtime wages under the FLSA and the NYLL.  See Mondragon, 2019 WL 2251536, at *9.

### 4. **Spread-of-hours pay**

Under the NYLL, employers must pay covered employees one extra hour of compensation, at the basic minimum wage rate, for each day on which they worked more than ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).  Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty."  Id. § 142-2.18.  Prior to the end of 2010, "this requirement only applied to employees paid at the New York minimum wage and did not ensure additional compensation to employees whose wages sufficiently exceed that floor."  Yuquilema v. Manhattan's Hero Corp., No. 13 Civ. 461 (WHP) (JLC), 2014 WL 4207106, at *4 (S.D.N.Y. Aug. 20, 2014) (internal citations omitted).  Effective January 1, 2011—that is, at all times relevant to Perez Garcia's wages—"the NYLL was amended such that the spread of hours regulations 'apply to all employees in restaurants . . . regardless of a given employee's regular rate of pay.'" Andrade v. 168 First Ave Rest. Ltd., No. 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. Jun 3, 2016), adopted by, 2016 WL 3948101 (S.D.N.Y. July 19, 2016).  An employee may recover spread-of-hours wages in addition to federal and state overtime wages.  See Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339–41 (S.D.N.Y. 2005).

Perez Garcia's alleges that he worked more than ten hours each workday, (ECF No. 68-2 ¶¶ 13–14), and therefore under current New York law he is entitled to recover spread-of-hours damages.

### D. **Statute of Limitations**

Under the NYLL, the statute of limitations is six years.  See NYLL ¶ 198(3).  Under the FLSA, the statute of limitations is two years, or, if the violations were "willful," three years.  See 29

U.S.C. § 255(a); see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988).  A FLSA violation is willful if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited." Id. at 133.

In support of his contention that Defendant Hirakegoma's conduct was willful, Perez Garcia alleges that it failed to post information as required by the FLSA and the NYLL, paid him in cash, did not have a time-recording system, and did not otherwise require him to record his hours.  (ECF No. 1 ¶¶ 59, 68–70; ECF No. 68-2 ¶¶ 21–22).  This deliberate conduct in disregard of an employer's obligations under the FLSA and the NYLL, as well as the absence of any evidence of attempts to comply with those obligations, demonstrate that Defendant Hirakegoma's conduct was willful.  See Mondragon, 2019 WL 2251536, at *10 (allegations of failure to pay sufficient wages were adequate to establish willfulness for statute of limitations purposes); Doo Nam Yang, 427 F. Supp. 2d at 340 (explaining that "failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal citations omitted).  In addition, Defendant Hirakegoma's default in this case and its conduct with regard to the settlement in principle in this case provide "additional support for a finding of willfulness within the meaning of FLSA."  Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 315 (S.D.N.Y. 2014); see Mondragon, 2019 WL 2551536, at *10 (holding that defendant's default and failure to participate supported finding of willfulness).  Therefore, the three-year statute of limitations applies to Perez Garcia's FLSA claims.

Applying the three-year statute of limitations, Perez Garcia may recover under the FLSA for the period from October 4, 2014 (three years before he filed his complaint) until September 27, 2017 (the date his employment ended).  See Mondragon, 2019 WL 2251536, at *7 (calculating

statute of limitations using date complaint was filed).  Applying the six-year statute of limitations under the NYLL, Perez Garcia may recover back pay for the period from October 4, 2011 (six years before the complaint was filed) until September 27, 2017.

### E.  Damages

#### 1.  Unpaid overtime damages

As described above, Perez Garcia has submitted a declaration in support of his claim for unpaid overtime wages.  (ECF No. 68-2).  He attests that he regularly worked over 40 hours per week for a fixed weekly salary, without an overtime premium for the hours he worked in excess of 40, in violation of the FLSA and the NYLL.  (Id. ¶¶ 14–20).  He cannot recover twice, that is, under both statutes, but rather, "may recover under the statute which provides the greatest amount of damages."  Gonzalez Mercedes v. Tito Transmission Corp., No. 15 Civ. 1170 (CM) (DF), 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018).  Both the FLSA and the NYLL mandate an overtime rate of one and one-half times the employee's "regular rate of pay."  29 U.S.C. § 207(a)(1); N.Y. COMP. CODES R. & REGS. TIT. 12, § 142-2.2.  Perez Garcia was paid a fixed weekly salary, so his regular hourly rate of pay under the FLSA "is computed by dividing the salary by the number of hours which the salary is intended to compensate."  29 C.F.R. § 778.113.  "The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement."  Pinovi v. FSS Enters., Inc., No. 13 Civ. 2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015); see Rosendo v. Everbrighten Inc., No. 13 Civ. 7256 (JGK) (FM), 2015 WL 1600057, at *3 (S.D.N.Y. Apr. 7, 2015).  The Court then "calculates the employee's regular hourly rate by dividing his weekly salary by forty hours."  Rosendo, 2015 WL 1600057, at *3.  As of January 1, 2011, New York law also provides that "where

an employer fails to pay a restaurant employee an hourly rate of pay, 'the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.'" Xochimitl v. Pita Grill of Hell's Kitchen, No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *6 (S.D.N.Y. Sept. 8, 2016) (quoting 12 N.Y.C.R.R. § 146-3.5)).  Because Perez Garcia's regular rate of pay is the same under both approaches, but the NYLL's longer statute of limitations allows him to recover for a longer period, the Court applies the NYLL for his damages calculations. See Perez, 2019 WL 7403983, at *7.

From October 4, 2011 until September 30, 2012, Perez Garcia worked 69 hours per week at a fixed salary of $550 per week.  (ECF No. 68 ¶ 38; ECF No. 68-2 ¶¶ 13, 16).  His regular rate of pay for this period was $13.75 ($550 / 40), so he was entitled to $20.63 for each overtime hour ($13.75 x 1.5), or a total of $598.27 per week ($20.63 x 29).  For this 52-week time period, he is entitled to $31,110.04 ($598.27 x 52).  (ECF No. 68-3).

From March 1, 2015 until June 30, 2015, Perez Garcia worked 69 hours per week at a fixed salary of $750 per week.  (ECF No. 68 ¶ 39; ECF No. 68-2 ¶¶ 14, 17).  His regular rate of pay for this period was $18.75 ($750 / 40), so he was entitled to $28.13 ($18.75 x 1.5) for each overtime hour, or a total of $815.77 per week ($28.13 x 29).  For this 17-week time period, he is entitled to $13,868.09 ($815.77 x 17).  (ECF No. 68-3 at 1).

From July 1, 2015 until December 30, 2016, Perez Garcia worked 69 hours per week at a fixed salary of $800 per week.  (ECF No. 68 ¶ 40; ECF No. 68-2 ¶¶ 14, 18).  His regular rate of pay for this period was $20.00 ($800 / 40), so he was entitled to $30.00 ($20 x 1.5) for each overtime

hour, or a total of $870 per week ($30 x 29).  For this 78-week time period, he is entitled to $67,860 ($870 x 78).  (ECF No. 68-3 at 1).

From December 31, 2016 until September 27, 2017, Perez Garcia worked 69 hours per week at a fixed salary of $900 per week.  (ECF No. 68-2 ¶¶ 14, 19).  His regular rate of pay for this period was $22.50 ($900 / 40), so he was entitled to $33.75 for each overtime hour ($22.50 x 1.5), or a total of $978.75 per week ($33.75 x 29).  For this 39-week time period, he is entitled to $38,171.25 ($978.75 x 39).  (ECF No. 68-3 at 1).  Therefore, the total overtime pay to which Perez Garcia is entitled is $151,009.38.

### 2.  **Spread of hours**

To determine Perez Garcia's spread-of-hours wages, the Court multiples the number of days per week that he worked in excess of ten hours by the statutory minimum wage and the number of weeks in a given pay period.  See Andrade, 2016 WL 3141567, at *6.  Perez Garcia regularly worked more than ten hours per day five days per week throughout his employment.  (ECF No. 68-2 ¶¶ 13–14).  During his employment, the minimum wage was $7.25 until December 30, 2013, when it increased to $8.00 until December 31, 2014, when it increased to $8.75 until December 31, 2015, when it increased to $9.00 until December 31, 2016, when it increased to $9.70.  See https://labor.ny.gov/stats/minimum_wage.shtm.  According to the Court's calculation, Perez Garcia would be entitled to spread-of-hours damages as follows:

- October 4, 2011 – September 30, 2012 = 5 x $7.25 x 52 = $1,885.00

- March 1, 2015 – December 30, 2015 = 5 x $8.75 x 43 = $1,881.25

- December 31, 2015 – December 30, 2016 = 5 x $9.00 x 52 = $2,340.00

- December 31, 2016 – September 27, 2017 = 5 x $9.70 x 39 = $1,891.50

- Total: $7,997.75

In his submission Perez Garcia requests $8,251.25 in unpaid spread of hours pay.  (ECF No. 68 ¶ 45; ECF No. 68-2 at 3).  In his damages calculation, Perez Garcia used a minimum wage rate of $11.00 per hour for the period of December 31, 2016 through September 27, 2017, instead of the correct minimum wage rate of $9.70, thus accounting for the discrepancy.  The Court awards Perez Garcia spread-of-hours damages in the amount of $7,997.75.

### 3.  Liquidated damages

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an 'additional equal amount as liquidated damages.'"  Xochimitl, 2016 WL 4704917, at *15 (quoting 29 U.S.C. § 216(b)).  "[W]here the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," the Court has the discretion to deny liquidated damages.  Barfield, 537 F.3d at 150.  This burden is "a difficult one," id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)), and where "defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award."  Guaman v. J&C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016).  A plaintiff who "is entitled to liquidated damages under the FLSA, but has been awarded wage and overtime damages pursuant to the NYLL because state law provided the greater relief" is entitled to FLSA liquidated damages "based on 'the amount of actual damages that would have been awarded had the federal minimum wage rate applied.'"  Kernes v. Global Structures, LLC, No. 15 Civ. 659 (CM) (DF), 2016 WL 880199, at

*4 (S.D.N.Y. Feb. 9, 2016) (quoting Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *8 (S.D.N.Y. Aug. 2, 2012)).

The NYLL also authorizes liquidated damages.  See Xochimitl, 2016 WL 4704917, at *15. Effective November 24, 2009, "an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'"  Id. (quoting NYLL § 198(1-a)).  "Courts deem defendants' actions willful where they have defaulted, see, e.g., Angamarca, 2012 WL 3578781, at *8, and, consequently, such defaulting defendants will have '[o]bviously . . . made no showing of 'good faith.'"  Xochimitl, 2016 WL 4704917, at *15 (quoting Guaman, 2016 WL 791230, at *7).  Effective April 9, 2011, the liquidated damages award under the NYLL is 100% of the amount of unpaid wages.  NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLL.  See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016); Mondragon, 2019 WL 2551536, at *11.  A plaintiff should recover "under the statute that provides the greatest relief."  Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *9 (S.D.N.Y. Nov. 7, 2016) (internal citation omitted).  The NYLL allows for prejudgment interest in addition to liquidated damages, see NYLL § 198(1-a), but the FLSA does not.  See Valdez v. H&S Rest. Operations, Inc., No. 14 Civ. 4701 (SLT) (MDG), 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016), adopted by 2016 WL 3087053 (E.D.N.Y. May 27, 2016). The NYLL therefore provides greater relief.  See Mondragon, 2019 WL 2551536, at *11.

Having defaulted, Defendant Hirakegoma has not carried its burden of demonstrating good faith under the NYLL, see Mondragon, 2019 WL 2551536, at *11, and therefore, Perez

Garcia is entitled to an additional $159,007.13 ($151,009.38 for overtime + $7,997.75 for spread of hours) in liquidated damages, 100% of his unpaid wages as set forth above.

### 4. Statutory penalties

Perez Garcia alleges that did not receive the required wage notices and wage statements. (ECF No. 68-2 ¶¶ 24–27).  The New York Wage Theft Prevention Act ("WPTA"), effective April 9, 2011, required Defendant Hirakegoma to provide Perez Garcia, at the time he was hired, with a notice containing, inter alia, the rate and frequency of his pay, NYLL § 195(1), and to furnish him a written statement with each payment of wages, listing, inter alia, the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked.  NYLL § 195(3); see Mondragon, 2019 WL 2551536, at *12.  As of April 9, 2011, violations of the WPTA resulted in damages of $50 per work week, for a maximum of $2,500.  NYLL § 198(1-b).  Since February 27, 2015, violations of Section 195(1) result in damages of $50 per workday, for a maximum of $5,000.  NYLL § 198(1-b).

Defendants failed to provide Perez Garcia with the required written wage notice.  (ECF No. 68-2 ¶ 25–27).  The violation occurred during the first and second portions of Perez Garcia's employment (Oct. 4, 2011–Sept. 30, 2012 and Mar. 1, 2015–Sept. 27, 2017).[6]  During the first portion of Perez Garcia's employment, Defendants violated the statute from October 4, 2011

---

[6] The Court notes that although Perez Garcia had a gap in his employment, he does not claim that he was rehired in 2015 and does not allege a second set of violations upon the second term of his employment.  As the Court cannot grant more damages than requested, Plaintiff is awarded the $10,000 in statutory damages as plead.  See Silge, 510 F.3d at 160 (limiting damages to those specified in demand in complaint "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer); Fed. R. Civ. P 54(c) (default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

through September 30, 2012, a period of 52 weeks, totaling $2,600 (52 x $50) in damages.  During the second portion of his employment, Defendants violated the statute from March 1, 2015 through September 27, 2017, a period of 941 days, totaling $47,050.00 (941 x $50) in damages. The violations exceed the statutory maximums under both version of the WTPA.  Accordingly, the Court awards Perez Garcia the maximum statutory damages of $5,000 for the NYLL wage notice claim.

Defendants also violated Section 195(3) of the NYLL, the statute's wage statement provision.  Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  Effective April 9, 2011, violations resulted in damages of $100 per workweek, for a maximum of $2,500.  NYLL §198(1-d).  Since February 27, 2015, violations of Section 195(3) result in damages of $250 per workday, for a maximum of $5,000.  NYLL § 198(1-d).

Defendants failed to provide Perez Garcia with the required written wage statements. (ECF No. 68-2 ¶ 25–27).  During the first portion of Perez Garcia's employment, Defendants' violation totaled $5,200 (52 x $100).  During the second portion of Perez Garcia's employment, Defendants' violation totaled $235,250 in damages (941 x $250).  The violations exceed the

statutory maximums under both versions of the WTPA.  Accordingly, the Court awards Perez Garcia the maximum statutory damages of $5,000 for the NYLL wage statement claim.

### 5. **Prejudgment interest**

Under the FLSA, prejudgment interest is not available where liquidated damages have been awarded.  See Mondragon, 2019 WL 2551536, at *11.  Under New York law, however, Perez Garcia may recover both liquidated damages and prejudgment interest, NYLL § 198(1)(a); because the former are considered punitive, while the latter "compensate[s] a plaintiff for the loss of use of money."  Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).  "[P]rejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages."  Xochimitl, 2016 WL 4704917, at *18 (internal citations omitted).

Under New York law, the simple interest rate is 9% per annum, N.Y. C.P.L.R.§ 5004, and is computed "on a simple interest basis."  Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998).  For damages that "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); see Marfia, 147 F.3d at 91 (noting courts' discretion to calculate prejudgment interest based on the "date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation").  The midpoint of the plaintiff's employment is often used as the date from which to calculate prejudgment interest in wage-and-hour cases.  See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012); Mondragon, 2019 WL 2551526, at *11.  The Court elects that approach here.  Perez Garcia's employment lasted a total of 1,303 days within the NYLL statute of limitations, and therefore, the midpoint of his employment was December 15, 2015 (652 days before September 27, 2017).

Calculating prejudgment interest from December 15, 2015, four years, two months, and twenty-three days have passed from that date, or 4.23 years.  Therefore, the interest accrued through the date of this Opinion and Order is $60,534.01 (($151,09.38 + $7,997.75) x .09 x 5.44).

**F.   Attorneys' Fees**

Perez Garcia requests an award of $12,699.00 for attorneys' fees and costs in this action. (ECF Nos. 76, 76-3).   Both the FLSA and the NYLL permit a successful plaintiff to recover reasonable attorneys' fees.  29 U.S.C. § 216(b); NYLL §§ 198, 663.  To determine a "presumptively reasonable fee," the Court multiples the hours counsel reasonably spent on the litigation by a reasonable hourly rate.  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  Simmons v. N.Y.C. Transit Auth. 575 F.3d 170, 174 (2d Cir. 2009) (internal citations omitted).

**1.   Reasonable hourly rate**

To determine whether an hourly rate is reasonable, the Second Circuit has instructed district courts to "apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill."  Galeana, 120 F. Supp. 3d at 323 (citing Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).  A court may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the 'undesirability'

of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983)).

In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour.  See Surdu v. Madison Global, LLC, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more decades of experience); see also Pastor v. Alice Cleaners, Inc., No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced litigators in wage-and-hour cases in this district); but see Williams v. Epic Sec. Corp., No. 15 Civ. 05610 (SDA), 2019 WL 1322384, at *3 (S.D.N.Y. Mar. 25, 2019) (awarding $600 per hour to lead attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-wage-and-hour experience).

The Court finds that the hourly rates sought for the three attorneys at the Michael Faillace & Associates, P.C. (the "Faillace Firm") (Michael Faillace - $450, Joshua Androphy - $400, and Haileigh Amant - $250), are higher than reasonable.  Other courts in this district have deemed reasonable hourly rates for Faillace to be $400 per hour, and for Androphy to be $350 per hour. See Montes v. 11 Hanover Group LLC, No. 17 Civ. 09376 (SDA), 2019 WL 4392516, at *2 (S.D.N.Y. Sept. 12, 2019) (reducing Faillace's hourly rate from $450 to $400 and Androphy's rate from $400 to $350); Sanchez v. DPC New York Inc., 381 F. Supp. 3d 245, 251–52 (S.D.N.Y. 2019) (reducing Faillace's hourly rate to $400).  Other courts in this district have also deemed $175 to be a reasonable hourly rate for Ms. Amant.  See Montes, 2019 WL 4392516, at *2 (reducing hourly rate for Ms. Amant from $250 to $175).  The Court finds that these reductions are particularly

appropriate in this case, from which is absent any novel or complex legal or factual questions and in which the defendant has defaulted.  See Xochimitl, 2016 WL 4704917, at *20 (reducing Faillace's rate to $425 and Androphy's rate to $300 where defendants had defaulted); Andrade, 2016 WL 3141567, at *11 (same).  Accordingly, the Court applies an hourly rate of $400 to Faillace, $350 to Androphy, and $175 to Amant.

In addition, a paralegal worked on this matter, at an hourly rate of $100–$175.  Hourly rates for paralegals of $100 to $150 per hour are typical for awards in this District.  See Williams v. Metro-North R.R. Co., No. 17 Civ. 3847 (JGK), 2018 WL 3370678, at *8 (S.D.N.Y. June 28, 2018); Tatum v. The City of New York, No. 06 Civ. 4290 (PGG) (GWG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010) (finding that $125 was reasonable rate for paralegals).  Accordingly, the Court applies an hourly rate of $100.

### 2.  Reasonable hours expended

To determine the reasonable number of hours required by a case, the critical inquiry is "whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).  Courts must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly."  Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC)

(JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016), adopted by 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (quoting Hensley, 461 U.S. at 434).

Perez Garcia has provided the Court with the contemporaneous billing records of his counsel at the Faillace Firm, including hours expended, dates of work, and brief descriptions of the tasks performed.  (ECF No. 76-3).  He seeks an award of $12,135.00 in attorneys' fees, for 6.1 hours of work completed by Faillace, 11 hours of work by Androphy, 18.8 hours of work by Amant, and 2.15 hours of work completed by a paralegal.  (ECF No. 76-3).

The time records Perez Garcia has submitted generally reflect reasonable tasks that appear to have been performed within a reasonable amount of time, with one exception.  The Court's review identifies seven entries totaling 1.95 hours expended by Androphy regarding drafting pleadings and discovery requests in a New Jersey bankruptcy proceeding.  (See, e.g., ECF No. 76-3 at 3 ("draft discovery reuqests [sic] in NJ bankruptcy adversary proceeding").  Because the Court is unable to immediately identify how those entries are connected with this litigation, it is appropriate to exclude them from the award.  See Cocoletzi v. Fat Sal's Pizza II, Corp., No. 15 Civ. 02696 (CM) (DF), 2019 WL 92456, at *24 (S.D.N.Y. Jan. 3, 2019).

Accordingly, the Court awards Perez Garcia attorneys' fees as follows:

| Attorney | Requested Rate | Approved Rate | Requested Hours | Approved Hours | Approved Total |
|---|---|---|---|---|---|
| M. Faillace | $450 | $400 | 6.1 | 6.1 | $2,440.00 |
| J. Androphy | $400 | $350 | 11 | 9.05 | $3,167.50 |
| H. Amant | $250 | $175 | 18.8 | 18.8 | $3,290.00 |
| Paralegal | $100–$175 | $100 | 2.15 | 2.15 | $215.00 |
| | | | | | **$9,112.50** |

### 3. Costs

Perez Garcia seeks to recover $564.00 in costs.  (ECF No. 76-3 at 4).  An employee who prevails in a wage-and-hour action is entitled to recover costs.  29 U.S.C. § 216(b); NYLL § 663(1).  Recoverable costs are "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  Leblanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (internal citation omitted).  Perez Garcia seeks reimbursement for the Court's $400 filing fee and the costs of due diligence inquiries on two of the individual defendants $164 ($82.00 x 2).  (ECF No. 76-3 at 4).  The Court grants Perez Garcia reimbursement for his costs for the filing fee and the due diligence inquiries, for a total of $564.00 ($400 + $164) in costs.  See Xochimitl, 2016 WL 4704917, at *22 (awarding costs in the amount of filing and certain service fees).

### III.   CONCLUSION

For the reasons set forth above, the Court awards damages to Perez Garcia against Defendant Hirakegoma comprised of the following:  (i) $151,009.38 in unpaid overtime wages, (ii) $7,997.75 in unpaid spread-of-hours wages, (iii) $159,007.13 in liquidated damages, (iv) $10,000.00 in statutory damages under state law, and (v) $60,534.01 in prejudgment interest.  In addition, Plaintiff's counsel is entitled to attorneys' fees in the amount of $9,112.50 and costs in the amount of $564.00, for a total judgment of $398,224.77.

Dated:     New York, New York
           March 9, 2020

SO ORDERED

SARAH L. CAVE
**United States Magistrate Judge**